SME:JPL/DR
F. #2025R00375

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
\*   SEPTEMBER 19, 2025   \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JORDAN KHAMMAR,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 25-CR-283
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1956(a)(1)(B)(i) and
3551 et seq.; 21 U.S.C. § 853(p); and 28
U.S.C. § 2461(c))

Judge Ann M. Donnelly
Magistrate Judge Seth D. Eichenholtz

THE GRAND JURY CHARGES:

At all times relevant to this Indictment, unless otherwise indicated:

### INTRODUCTION

I.    <u>The Defendant and Relevant Entities</u>

    1.    The defendant JORDAN KHAMMAR was a United States citizen who at times maintained one or more residences in the states of New York, Florida and Ohio.

    2.    Olive Tree Ventures, Inc. ("Olive Tree") was a New York-registered corporation that maintained a business address in Brooklyn, New York since approximately 2018. The defendant JORDAN KHAMMAR founded Olive Tree in or about 2010 and was the company's president and chief executive officer.

    3.    Sideswipe Media, Inc. ("Sideswipe") was a New York-registered media production company that maintained a business address in Brooklyn, New York since approximately 2018. The defendant JORDAN KHAMMAR founded Sideswipe in or about 2015 and was the company's president and chief executive officer.

4.     Big Toro, Inc. ("Big Toro") was an Ohio-registered corporation with a registered address in Columbus, Ohio. The defendant JORDAN KHAMMAR founded Big Toro in or about 2018 and was the company's president.

5.     Company-1, an entity the identity of which is known to the Grand Jury, was a multinational media, brand management and consulting company that maintained offices in Brooklyn, New York and Paris, France. The defendant JORDAN KHAMMAR was hired by Company-1 in or about 2006 to provide various financial consulting services. KHAMMAR eventually became Company-1's financial director. In that capacity, KHAMMAR had access to and control over certain of Company-1's financial accounts and systems including its banking, accounting, bookkeeping and payroll accounts and systems (the "Financial Systems"), and was responsible for, among other things, reconciling and overseeing the reconciliation of these accounts.

6.     Bank-1, an entity the identity of which is known to the Grand Jury, was a global financial institution headquartered in New York, New York.

7.     Bank-2, an entity the identity of which is known to the Grand Jury, was a global financial institution headquartered in New York, New York.

8.     Payroll Company-1, an entity the identity of which is known to the Grand Jury, was a company that provided payroll and human resources services to businesses.

9.     Payroll Company-2, an entity the identity of which is known to the Grand Jury, was a company that provided payroll and human resources services to businesses.

II.    The Fraudulent Scheme

10.    In or about and between January 2015 and May 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

JORDAN KHAMMAR engaged in a scheme to defraud Company-1 by misusing his access to and control of the company's Financial Systems to (a) steal, misappropriate and embezzle millions of dollars from Company-1 and (b) conceal and further his fraudulent scheme, including by making false and fraudulent entries in and relating to the Financial Systems.

11. During that time period, in over 300 transactions, the defendant JORDAN KHAMMAR wired, and caused Company-1 to wire, at least $8.2 million to which he was not entitled to himself and to one or more entities that he controlled. Most of these transactions were sent from Company-1's bank account held at Bank-1 (the "Company-1 Account") to an account at Bank-2 held in the name of Olive Tree (the "Olive Tree Account") and controlled by KHAMMAR. KHAMMAR initiated many of these wire transactions from within the Eastern District of New York.

12. In furtherance of the scheme, the defendant JORDAN KHAMMAR took various steps to conceal his actions from and deceive Company-1, including by: (a) manipulating one or more of the Financial Systems; (b) circumventing Company-1's internal controls, practices and procedures; and (c) limiting and withholding full access and visibility to one or more of the Financial Systems from Company-1 employees and consultants. For example:

(a) KHAMMAR created or caused the creation of more than 100 false and fraudulent entries in and affecting the Financial Systems, including in Company-1's accounting system and general ledger. KHAMMAR falsely recorded these entries in Company 1's general ledger as purported check payments and debits in satisfaction of various Company-1 expenses including credit card bills, federal and state taxes, and costs associated with renovating Company-1's Brooklyn office. However, these false debit entries actually corresponded to fraudulent wire transfers caused by KHAMMAR from the Company-1 Account to one or more

accounts for KHAMMAR's benefit including the Olive Tree Account. KHAMMAR was not entitled to the money that was wired from Company-1.

(b) KHAMMAR also established and registered Olive Tree in one or more of the Financial Systems as a vendor to Company-1 and fraudulently recorded payments to Olive Tree as payments to a purported legitimate vendor. KHAMMAR did so without following Company-1's internal controls, practices and procedures with respect to vendor registration, invoicing and payment, which would have required oversight and approval from Company-1 management. Olive Tree had not performed the services or functions as a vendor to Company-1 and was not entitled to any such payments.

(c) KHAMMAR also took steps to limit access and visibility to transaction details related to the Company-1 Account, including information detailing the fraudulent wire transfers, from one or more Company-1 employees and consultants under KHAMMAR's supervision. Such individuals were responsible for providing bookkeeping, reconciliation and cash flow analysis, among other functions, and had a legitimate need for such access and information.

13. In furtherance of the scheme and in order to conceal the proceeds derived from it, the defendant JORDAN KHAMMAR engaged in financial transactions involving the fraudulently obtained proceeds including: (a) financing his independent business ventures, including Sideswipe; (b) purchasing real estate; and (c) and paying himself and his personal expenses. Examples of transactions involving the fraudulently obtained proceeds included the following:

(a) KHAMMAR transferred approximately $3.2 million of the funds he fraudulently obtained from Company-1 from the Olive Tree Account to Payroll Company-1

to, in turn, distribute the money as payroll payments from and in furtherance of KHAMMAR's independent business ventures, including to multiple individuals associated with Sideswipe's film and television productions. In this manner, via Payroll Company-1, KHAMMAR also distributed approximately $325,000 he had misappropriated from Company-1 in purported payroll payments to himself. From the Olive Tree Account, KHAMMAR also: (i) made approximately $429,000 in commercial real estate rental payments for an Olive Tree and Sideswipe office space located in Brooklyn; (ii) transferred at least $415,000 to an account at Bank-2 held in the name of Sideswipe and controlled by KHAMMAR; and (iii) transferred approximately $800,000 to an account at Bank-2 held in the name of Big Toro and controlled by KHAMMAR. The funds transferred to Big Toro were primarily used to fund additional purported payroll payments for KHAMMAR's benefit, via Payroll Company-2, including approximately $163,000 in payments to KHAMMAR directly.

    (b) In or about February 2020 and March 2022, KHAMMAR used funds he fraudulently obtained from Company-1 to purchase residential properties in Ohio and Florida for approximately $145,000 and approximately $113,000, respectively. In or about May 2024, KHAMMAR sold the Florida property for profit. Thereafter, in or about August 2024, KHAMMAR purchased another residential property in Ohio for approximately $242,000 using proceeds from the sale of the Florida property as well as additional funds stolen from Company-1.

    (c) Additionally, from the Olive Tree Account, KHAMMAR: (i) used funds to pay approximately $500,000 in personal credit card bills; (ii) withdrew approximately $135,000 in cash; and (iii) transferred approximately $1.1 million to his personal checking account held at Bank-2, which funds were used to, among other things, pay an additional

approximately $700,000 in personal credit card bills and to fund a personal investment account. KHAMMAR also used the funds to make tens of thousands of dollars in payments for other expenses including for furniture, travel, meals and utilities.

## COUNTS ONE THROUGH FIVE
(Wire Fraud)

14. The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

15. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JORDAN KHAMMAR did knowingly and intentionally devise a scheme and artifice to defraud Company-1, and to obtain money and property from Company-1 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit:

| Count | Approx. Date | Description |
|---|---|---|
| ONE | 10/29/2021 | Wire transfer of approximately $48,200 from the Company-1 Account to the Olive Tree Account |
| TWO | 2/28/2022 | Wire transfer of approximately $48,200 from the Company-1 Account to the Olive Tree Account |
| THREE | 9/20/2022 | Wire transfer of approximately $6,100 from the Company-1 to the Olive Tree Account |
| FOUR | 10/20/2023 | Wire transfer of approximately $40,000 from the Company-1 Account to the Olive Tree Account |
| FIVE | 9/13/2024 | Wire transfer of approximately $45,230 from the Company-1 Account to the Olive Tree Account |

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

## COUNTS SIX THROUGH EIGHT
(Money Laundering)

16. The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

17. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant JORDAN KHAMMAR did knowingly and intentionally conduct one or more financial transactions in and affecting interstate and foreign commerce, as set forth below, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of such specified unlawful activity:

| Count | Approx. Date | Description |
|---|---|---|
| SIX | 9/27/2022 | Wire transfer of approximately $20,650.24 from the Olive Tree Account to Payroll Company-1 used, in turn, to fund Sideswipe's payroll including payment to KHAMMAR |
| SEVEN | 10/26/2023 | Wire transfer of approximately $19,426.06 from the Olive Tree Account to Payroll Company-1 used, in turn, to fund Sideswipe's payroll including payment to KHAMMAR |
| EIGHT | 7/10/2024 | Wire transfer of approximately $19,260.24 from the Olive Tree Account to Payroll Company-1 used, in turn, to fund Sideswipe's payroll including payment to KHAMMAR |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH FIVE

18. The United States hereby gives notice to the defendant JORDAN KHAMMAR that, upon his conviction of any of the offenses charged in Counts One through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses including but not limited to: the real property and premises known as 745 East Deshler Avenue, Columbus, Ohio 43206, title to which is held in the name of the defendant, Jordan M. Khammar, and all proceeds traceable thereto.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS SIX THROUGH EIGHT

20. The United States hereby gives notice to the defendant JORDAN KHAMMAR that, upon his conviction of any of the offenses charged in Counts Six through Eight, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982 (a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to: the real property and premises known as 745 East Deshler Avenue, Columbus, Ohio 43206, title to which is held in the name of the defendant, Jordan M. Khammar, and all proceeds traceable thereto.

21. If any of the above-described property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

FOREPERSON

By *David Pitluck*, Assistant U.S. Attorney
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK